UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---------------------------------------------------- X

Paul D. Ceglia,

                    Plaintiff,

        -against-

Mark Elliot Zuckerberg *et al.*,

                Defendants.

---------------------------------------------------- X

No. 1:10-cv-00569-RJA-LGF

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN INJUNCTION UNDER THE ALL WRITS ACT AND ANTI-INJUNCTION ACT

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND ..................................................................................................... 3

    A. This Action.......................................................................................................................... 3

    B. Ceglia's Fraud Indictment And Action Against The U.S. Attorney General .................... 4

    C. Facebook's Malicious Prosecution Suit Against Ceglia's Lawyers ................................... 5

    D. Argentieri's Obtrusion In Ceglia's Criminal Case............................................................. 5

    E. Argentieri's 2015 Defamation Lawsuit Against Zuckerberg, Facebook, and Facebook's Then-General Counsel ...................................................................... 7

    F. Argentieri's 2024 Lawsuit Against Meta............................................................................ 7

    G. The *Moskowitz* Action ...................................................................................................... 8

LEGAL STANDARD................................................................................................................ 10

ARGUMENT ............................................................................................................................. 12

    I. An Injunction Is Necessary And Appropriate To Restrain Argentieri From Relitigating The Authenticity Of The WFH Document......................................... 12

        A. The Purported Authenticity Of The WFH Document Was Conclusively Determined In This Action ............................................................................ 14

        B. The Purported Authenticity Of The WFH Document Was "Actually Litigated" And Decided In This Action .................................................................... 15

        C. Argentieri Had A Full And Fair Opportunity To Litigate The Purported Authenticity Of The WFH Document............................................................. 16

        D. Resolution Of The WFH Document's Authenticity Was Necessary To Support This Court's Judgment In This Action ................................................... 20

    II. An Injunction Is Necessary And Appropriate Because Argentieri Is A Vexatious Litigant....................................................................................................... 21

    III. The Traditional Equitable Factors Also Support Injunctive Relief ................................. 23

CONCLUSION.......................................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

## Cases

*1199SEIU United Healthcare Workers E. v. PSC Cmty. Servs.*,
  634 F. Supp. 3d 158 (S.D.N.Y. 2022) ............................................................................11, 12

*Amalgamated Sugar Co. v. NL Indus., Inc.*,
  825 F.2d 634 (2d Cir. 1987) ........................................................................................11

*Anonymous v. N.Y. State Justice Ctr. for the Protection of People with Special Needs*,
  167 A.D.3d 113 (3d Dep't 2018) ...........................................................................18, 19

*Argentieri v. Zuckerberg*,
  2016 WL 4151528 (Cal. Super. Ct. Feb. 16, 2016) .................................................7

*Argentieri v. Zuckerberg*,
  8 Cal. App. 5th 768 (2017) .........................................................................................7

*In re Baldwin-United Corp.*,
  770 F.2d 328 (2d Cir. 1985) .......................................................................................11

*Broad. Music, Inc. v. CBS, Inc.*,
  421 F. Supp. 592 (S.D.N.Y. 1976) ...........................................................................23

*Ceglia v. Holder*,
  2014 WL 12773896 (W.D.N.Y. Mar. 25, 2014) ...................................................4, 16

*Ceglia v. Zuckerberg*,
  2013 WL 1208558 (W.D.N.Y. Mar. 26, 2013) ...................................1, 3, 4, 14, 15, 16, 17, 20

*Ceglia v. Zuckerberg*,
  2014 WL 1224574 (W.D.N.Y. Mar. 25, 2014) ...................................................4, 15, 20

*Ceglia v. Zuckerberg*,
  600 F. App'x 34 (2d Cir. 2015) .......................................................4, 5, 15, 17, 20

*Chick Kam Choo v. Exxon Corp.*,
  486 U.S. 140 (1988) .....................................................................................................10

*Cnty. of Sacramento v. Henrikson*,
  2017 WL 1207884 (E.D. Cal. Feb. 3, 2017) ...........................................................25

*Conason v. Megan Holding, LLC*,
  29 N.E.3d 215 (N.Y. 2015) .........................................................................................13

*Diabo v. Delisle*,
  500 F. Supp. 2d 159 (N.D.N.Y. 2007) .....................................................................23

*Doctor's Assocs., LLC v. Tripathi*,
   794 F. App'x 91 (2d Cir. 2019) ...................................................................13

*Erie Indem. Co. v. Stephenson*,
   2024 WL 844370 (W.D. Pa. Feb. 28, 2024) .........................................24

*Facebook, Inc. v. DLA Piper LLP (US)*,
   134 A.D.3d 610 (1st Dep't 2015) ...........................................................5

*Gelb v. Royal Globe Ins. Co.*,
   798 F.2d 38 (2d Cir. 1986) ....................................................................20

*Hermes of Paris, Inc. v. Swain*,
   2021 WL 5170726 (2d Cir. Nov. 8, 2021) ..........................................21

*Jones v. City of Buffalo*,
   867 F. Supp. 1155 (W.D.N.Y. 1994) ...................................................22

*Jones v. Grisanti*,
   2024 WL 3415361 (W.D.N.Y. July 15, 2024) ...................................18

*Kaplan v. Reed Smith LLP*,
   919 F.3d 154 (2d Cir. 2019) ..................................................................12

*Keep on Kicking Music, Ltd. v. Hibbert*,
   268 F. Supp. 3d 585 (S.D.N.Y. 2017) .................................................23

*Klay v. United Healthgroup, Inc.*,
   376 F.3d 1092 (11th Cir. 2004) .............................................................12

*Ling Li v. Asphalt Green, Inc.*,
   581 F. App'x 6 (2d Cir. 2014) ...............................................................10

*Marseet v. Rochester Inst. of Tech.*,
   2023 WL 9539884 (W.D.N.Y. June 28, 2023) .................................22

*In re Martin-Trigona*,
   737 F.2d 1254 (2d Cir. 1984) .........................................................11, 24

*In re Martin-Trigona*,
   9 F.3d 226 (2d Cir. 1993) ......................................................................21

*MLE Realty Assocs. v. Handler*,
   192 F.3d 259 (2d Cir. 1999) ..................................................................12

*Montana v. United States*,
   440 U.S. 147 (1979) ................................................................................25

*Montesa v. Schwartz*,
   2016 WL 8140048 (S.D.N.Y. Jan. 13, 2016) ....................................13

*Orkin v. Albert*,
   742 F. Supp. 3d 17 (D. Mass. 2024) ..........................................24, 25

*Pike v. Freeman*,
    266 F.3d 78 (2d Cir. 2001)............................................................................13

*Russell v. N.Y. Univ.*,
    246 N.E.3d 868 (N.Y. 2024)........................................................................13

*Safir v. U.S. Lines, Inc.*,
    792 F.2d 19 (2d Cir. 1986)..................................................................11, 21, 22

*Satterfeld v. Pfizer, Inc.*,
    2005 WL 1765708 (S.D.N.Y. July 18, 2005)...............................................21

*In re SDDS, Inc.*,
    97 F.3d 1030 (8th Cir. 1996).......................................................................24

*Selletti v. Carey*,
    70 F. App'x 603 (2d Cir. 2003).............................................................12, 13

*Shukla v. Meta Platforms Inc.*,
    2024 WL 4108563 (S.D.N.Y. July 17, 2024).................................................7

*Smith v. Bayer Corp.*,
    564 U.S. 299 (2011)................................................................................2, 13

*Smith v. Woosley*,
    399 F.3d 428 (2d Cir. 2005)........................................................................11

*Taylor v. Sturgell*,
    553 U.S. 880 (2008)......................................................................13, 18, 20

*Terry v. Charitable Donor Advised Fund, L.P.*,
    2024 WL 382113 (S.D.N.Y. Feb. 1, 2024)...................................................20

*United States v. Mason Tenders Dist. Council of Greater N.Y.*,
    205 F. Supp. 2d 183 (S.D.N.Y. 2002)..........................................................23

*United States v. N.Y. Tel. Co.*,
    434 U.S. 159 (1977)....................................................................................10

*Walter E. Heller & Co. v. Cox*,
    379 F. Supp 299 (S.D.N.Y. 1974)................................................................25

*Watts v. Swiss Bank Corp.*,
    265 N.E.2d 739 (N.Y. 1970).............................................................18, 19, 20

*Woodlawn Cemetery v. Loc. 365, Cemetery Workers & Greens Attendants Union*,
    930 F.2d 154 (2d Cir. 1991)........................................................................24

*Wyly v. Weiss*,
    697 F.3d 131 (2d Cir. 2012)........................................................................10

**Statutes**

28 U.S.C. § 1651 .........................................................................................................1

28 U.S.C. § 1651(a) ........................................................................................2, 10, 13

28 U.S.C. § 2283 .............................................................................................1, 2, 10

**Rules**

Fed. R. Civ. P. 65 ......................................................................................................11

**Other Authorities**

Bob Van Voris & Stephan Kueffner, *Facebook Fugitive Ceglia Wins Reprieve to Stay in Ecuador*, BLOOMBERG (June 7, 2019), https://tinyurl.com/y68efd3n .........................6

Patrick Smith, *Ecuador Refuses US Request to Extradite Facebook Fugitive Paul Ceglia*, LAW.COM (June 18, 2019), https://tinyurl.com/5fhesn6j ..............................................6

Restatement (Second) of Judgments § 27 ....................................................................15

Defendant Meta Platforms, Inc., f/k/a Facebook, Inc. ("Meta" or "Facebook"), by and through its undersigned counsel, respectfully submits this Memorandum of Law in Support of its Motion for an Injunction Pursuant to the All Writs Act and the Anti-Injunction Act. Meta seeks an Order: (1) enjoining the action brought by Paul A. Argentieri, counsel for Plaintiff Paul D. Ceglia, captioned *Paul A. Argentieri v. Avraham C. Moskowitz and Moskowitz & Book, LLP*, Index No. 50602, that is pending before the New York Supreme Court, Allegany County and (2) enjoining Argentieri from bringing claims in any forum related to the purported authenticity of the Work for Hire Document. The central premise of the *Moskowitz* action—that the Work for Hire Document is authentic—was litigated before and rejected by this Court a decade ago. Argentieri's repeated attempts to relitigate this Court's judgment should be barred. An injunction pursuant to the All Writs Act, 28 U.S.C. § 1651, and the Anti-Injunction Act, 28 U.S.C. § 2283, is proper.

## PRELIMINARY STATEMENT

Over a decade ago, in a painstaking 155-page Report and Recommendation, Magistrate Judge Foschio found that the "Work for Hire" ("WFH") Document at the center of Paul Ceglia's fraudulent lawsuit claiming ownership of half of Facebook was a "gross fabrication"—a Report and Recommendation this Court adopted in full, and the Second Circuit affirmed. *Ceglia v. Zuckerberg*, 2013 WL 1208558, at *15 (W.D.N.Y. Mar. 26, 2013), *report and recommendation adopted*, 2014 WL 1224574 (W.D.N.Y. Mar. 25, 2014), *aff'd*, 600 F. App'x 34 (2d Cir. 2015) ("the *Ceglia* action"). Paul Argentieri represented Ceglia throughout the proceedings in this Court. While they were ongoing, the United States Attorney's Office for the Southern District of New York charged Ceglia with mail and wire fraud for having brought the fraudulent lawsuit. Rather than face imminent trial, Ceglia cut off his ankle bracelet and fled the United States to Ecuador.

Since then, Ceglia has remained a fugitive from justice. Meanwhile, Argentieri has repeatedly and vexatiously challenged in five separate proceedings this Court's binding

1

determination that the WFH Document was a forgery. His latest attempt is a suit pending in New York state court against Moskowitz & Book, LLP (the "*Moskowitz* action"), the former local counsel for Facebook and Zuckerberg in a follow-on suit to this action. The crux of Argentieri's complaint is that this Court got it wrong because the WFH Document was supposedly an authentic contract between Ceglia and Zuckerberg. Argentieri openly describes the *Moskowitz* action as a "resurrection and rebirth of the 'WORK FOR HIRE' CONTRACT breach of contract action commenced on June 30, 2010." Ex. A, at 3.[1] And, as part of that suit, Argentieri has repeatedly attempted to force Meta and Zuckerberg, who are not parties, to provide discovery and expend resources to respond to his debunked and barred claims.

The All Writs Act and the Anti-Injunction Act empower federal courts to issue injunctions in precisely this scenario—to prevent parties from reopening issues that a federal court has conclusively decided. The All Writs Act gives federal courts the power to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Anti-Injunction Act permits federal courts to "grant an injunction to stay proceedings in a State court … where necessary … to protect or effectuate its judgments." *Id.* § 2283. This provision of the Anti-Injunction Act, "known as the relitigation exception," is "designed to implement 'well-recognized concepts' of claim and issue preclusion" and "authorizes an injunction to prevent state litigation of a claim or issue 'that previously was presented to and decided by the federal court.'" *Smith v. Bayer Corp.*, 564 U.S. 299, 306 (2011).

Because Argentieri continues to try to reopen this Court's and the Second Circuit's conclusive determination that the WFH Document was fabricated, this Court should enjoin

---

[1] All citations in the form "Ex. _" refer to exhibits attached to the Declaration of Amanda M. Aycock in support of this brief.

Argentieri from prosecuting the *Moskowitz* action or *any* future action in any court asserting the validity of the WFH Document. Each of the requirements of issue preclusion is satisfied here. The issue that the *Moskowitz* action seeks to relitigate—the purported authenticity of the WFH Document—was the key issue in this action, and it was conclusively decided by this Court. *Ceglia*, 2013 WL 1208558, at *73. Argentieri had a full and fair opportunity to litigate the issue by acting as counsel and presenting arguments and proof on behalf of Ceglia. And the Court's resolution of that issue was necessary to its judgment because the viability of Ceglia's claim to ownership of Facebook was premised on the fraudulent WFH Document. Separately, an injunction is also warranted because Argentieri satisfies the standards for a vexatious litigant.

## FACTUAL BACKGROUND

### A.      This Action

On June 30, 2010, Argentieri, on behalf of his client Paul Ceglia, filed a breach-of-contract action against Facebook and Mark Zuckerberg in New York Supreme Court, Allegany County. The complaint alleged that Ceglia and Zuckerberg had executed a "Work for Hire Document" in which Ceglia hired Zuckerberg "to perform programming for StreetFax.com ('StreetFax'), an on-line database developed by [Ceglia]," and agreed to "help fund the development of Facebook in exchange for a one-half interest in Facebook." *Ceglia*, 2013 WL 1208558, at *1. The core allegation was that Zuckerberg breached the WFH Document. Facebook and Zuckerberg denied its authenticity and maintained that "another document, the 'StreetFax Document,' [wa]s the operative agreement" between them. *Id.*

Facebook and Zuckerberg removed the action to this Court, Dkt. 1, and in May 2011, it was referred to Magistrate Judge Foschio for pretrial proceedings, Dkt. 41. Two years later, after discovery focused on the WFH Document's authenticity and extensive motion practice, Magistrate Judge Foschio issued a 155-page Report and Recommendation that Ceglia's "entire action is a

fraud on the court." *Ceglia*, 2013 WL 1208558, at *24. He reviewed voluminous forensic and expert evidence—including analysis of the ink, paper, printing, handwriting, and stylistic and historic anomalies in the documents, as well as real and fabricated emails—and concluded that "clear and convincing evidence establishes [that] the StreetFax Document is the authentic contract and the [WFH] Document is a recently created fabrication" developed "for the express purpose of filing the instant action." *Id.* at *4, *57. Magistrate Judge Foschio recommended dismissal with prejudice. *Id.* at *57.[2]

On March 25, 2014, this Court adopted the Report and Recommendation in full and dismissed the action with prejudice "for the reasons set forth in Magistrate Judge Foschio's admirably well-reasoned Report and Recommendation." *Ceglia*, 2014 WL 1224574, at *1. The Second Circuit affirmed, holding that "clear and convincing evidence" established that "the [WFH] document at the foundation of th[e] suit is a forgery." *Ceglia v. Zuckerberg*, 600 F. App'x 34, 37 (2d Cir. 2015).

## B.    Ceglia's Fraud Indictment And Action Against The U.S. Attorney General

While this case was pending, a federal grand jury in the Southern District of New York indicted Ceglia for wire and mail fraud for fabricating the WFH Document and attempting to defraud this Court. *See United States v. Ceglia*, No. 12-cr-876 (S.D.N.Y.) ("Crim. Dkt."). In response, Ceglia—again represented by Argentieri—sued then-Attorney General Eric Holder, then-U.S. Attorney Preet Bharara, and two Assistant U.S. Attorneys in this Court, seeking to enjoin the prosecution as a purported violation of his First Amendment rights. *See Ceglia v. Holder*, 2014 WL 12773896, at *1 (W.D.N.Y. Mar. 25, 2014) (the "*Holder* action"). This Court dismissed *Holder* the same day it dismissed this action. *See* Dkt. 674; *Ceglia*, 2014 WL 12773896, at *1.

---

[2] Magistrate Judge Foschio also recommended in the alternative that the action be dismissed on the ground that Ceglia had engaged in spoliation of evidence. *Id.* at *73.

While Ceglia's appeals from both dismissals were pending, he "absconded from justice," cutting off his monitoring bracelet and fleeing the country. *See Ceglia*, 600 F. App'x at 36. The Second Circuit declined to dismiss the appeals on fugitive grounds, instead affirming dismissal of both actions based on "the merits—or, more accurately, the lack thereof," finding that Ceglia's lawsuit was an outright fraud on the Court. *Id.* at 38.

## C.      Facebook's Malicious Prosecution Suit Against Ceglia's Lawyers

Meanwhile, Facebook and Zuckerberg sued Ceglia's lawyers, including Argentieri, for malicious prosecution in New York state court. Facebook and Zuckerberg were represented by Kellogg, Hansen, Todd, Figel & Frederick, PLLC, and local counsel Avraham Moskowitz of Moskowitz & Book, LLP. Their complaint alleged that Argentieri "conspired to file and prosecute a fraudulent lawsuit against Facebook and [Zuckerberg], based on fabricated evidence, for the purpose of extorting a lucrative and unwarranted settlement" and that he "knew or should have known that the lawsuit was a fraud." Ex. B, ¶ 1.

The trial court denied defendants' motion to dismiss, but the Appellate Division reversed, holding that the complaint did not adequately allege that the attorney defendants "patent[ly]" lacked probable cause to file and maintain the action. *Facebook, Inc. v. DLA Piper LLP (US)*, 134 A.D.3d 610, 614 (1st Dep't 2015). It reasoned that Facebook and Zuckerberg had not sufficiently shown that "the [WFH] Contract was an obvious forgery," noting that, before removal, "the Allegany Court granted a TRO after reviewing it" and "the authenticity of the document was vigorously contested throughout the Ceglia litigation." *Id.* But the Appellate Division did not— and could not—disturb this Court's "finding that the [WFH] Contract and purported emails were all forgeries and that the [*Ceglia*] lawsuit was a massive fraud on the court." *Id.* at 612.

## D.      Argentieri's Obtrusion In Ceglia's Criminal Case

Subsequently, Argentieri filed a letter in Ceglia's criminal case falsely claiming that the

Appellate Division's decision "reject[ed]" this Court's "conclusion of fraud or forgery." Crim. Dkt. 185, at 2. He falsely stated that Magistrate Judge Foschio "was misled into" concluding that "'the Streetfax Document is the authentic contract and the [WFH] Document is a recently created fabrication.'" *Id.* at 5. He falsely stated that "[t]he Magistrate's fantastic finding of fact … has been rendered a legal, factual and logical impossibility." *Id.* at 8. He falsely stated that "the WFH contract is not a recently created 2 page fabrication" and sought an order compelling examination of Zuckerberg's "emails stored on the Harvard servers, and on the 28 computer devices preserved from [another] lawsuit" to obtain "the best evidence of Zuckerberg's contractual relationship with Paul Ceglia." *Id.* at 18. Argentieri then filed a supplemental letter and affidavit again requesting production of those same materials. Crim. Dkt. 192, at 2. He also submitted another affidavit supporting Ceglia's in absentia motion to dismiss the indictment as a fraud on the court, purporting to act as a "fact witness" to the WFH Document's authenticity. Crim. Dkt. 211-1.

The court in Ceglia's criminal case, the Honorable Vernon Broderick of the Southern District of New York, denied Argentieri's requests as "improper," noting that he was neither a party nor counsel and lacked standing to file submissions. Crim. Dkt. 194, at 2. Judge Broderick also explained that he had already addressed "the issue of the 28 devices": he had authorized the issuance of subpoenas to Facebook and Zuckerberg and, after Ceglia's objection that certain data from the devices was purportedly missing, found "no reason to doubt" counsel's compliance with the search of the relevant devices. *Id.* at 2-3. Ceglia's criminal case remains stayed pending his return to the United States.[3]

---

[3] On August 23, 2018, Ceglia was arrested in Ecuador. An Ecuadorian trial court later approved a U.S. extradition request, a decision that was upheld on appeal. Ecuador's then-President Lenin Moreno later overturned the decision. *See* Patrick Smith, *Ecuador Refuses US Request to Extradite Facebook Fugitive Paul Ceglia*, LAW.COM (June 18, 2019), https://tinyurl.com/5fhesn6j. Ceglia is currently believed to be residing in Ecuador. *See* Bob Van Voris & Stephan Kueffner, *Facebook*

**E.  Argentieri's 2015 Defamation Lawsuit Against Zuckerberg, Facebook, and Facebook's Then-General Counsel**

On October 19, 2015, Argentieri filed a defamation lawsuit against Zuckerberg, Facebook, and Facebook's then-general counsel in California state court.  Argentieri alleged that Facebook had defamed him in a statement to the press about Facebook's malicious prosecution lawsuit against Ceglia's lawyers.  *Argentieri v. Zuckerberg*, 2016 WL 4151528, at *1 (Cal. Super. Ct. Feb. 16, 2016).  In his complaint, Argentieri continued to press the same discredited theory: that "Ceglia's contract with Zuckerberg is authentic" and that numerous forensic experts had confirmed as much.  Ex. C, ¶ 21.  The court granted defendants' motion to strike the complaint under California's anti-SLAPP law, *Argentieri*, 2016 WL 4151528, at *3-4, and the Court of Appeals affirmed, *see Argentieri v. Zuckerberg*, 8 Cal. App. 5th 768, 795 (2017).

**F.  Argentieri's 2024 Lawsuit Against Meta**

On June 27, 2024, Argentieri filed a complaint against Meta[4] in New York Supreme Court, Allegany County.  *See* Ex. D.[5]  Argentieri again sought to relitigate the merits of this action.  He claimed that (1) the WFH Document is the authentic contract between Zuckerberg and Ceglia; and (2) the StreetFax Contract was a forgery.  *See, e.g.*, *id.* at 9, 23, ¶ 17(A)-(B).  Argentieri alleged that it was not Ceglia but Facebook and Zuckerberg who committed fraud on the court because they (successfully) challenged the authenticity of the WFH Document and asserted that the StreetFax contract was authentic.  *See, e.g.*, *id.* ¶¶ 17(A)-(B), 37, 117.  Argentieri also argued that Magistrate Judge Foschio's "opinion will never have any res judicata precedent in the Supreme

---

*Fugitive Ceglia Wins Reprieve to Stay in Ecuador*, BLOOMBERG (June 7, 2019), https://tinyurl.com/y68efd3n.

[4] As part of a 2021 rebranding, Facebook, Inc. changed its name to Meta Platforms, Inc.  *See Shukla v. Meta Platforms Inc.*, 2024 WL 4108563, at *4 n.2 (S.D.N.Y. July 17, 2024).

[5] Argentieri never properly served Meta with the complaint.

Court of New York." *Id.* ¶ 40. Additionally, Argentieri asserted claims for "fraudulent interference [with] a contract" and an unspecified "tort" claim for money damages. *Id.* ¶ 16.

Meta timely removed the action on July 29, 2024, Dkt. 1, *Argentieri v. Meta Platforms, Inc.*, No. 1:24-cv-00705 (W.D.N.Y.) ("Meta Dkt."), and filed a motion to dismiss on August 5, 2024, Meta Dkt. 9. On August 7, 2024, Judge Arcara referred all pre-trial matters in the case to Magistrate Judge Foschio. Meta Dkt. 20. Five days later, Argentieri filed a notice of voluntary dismissal. Meta Dkt. 22.

### G.     The *Moskowitz* Action

On May 17, 2024—before filing his suit against Meta—Argentieri brought a substantially similar action in New York Supreme Court, Allegany County, against Avraham C. Moskowitz and Moskowitz & Book, LLP, local counsel for Facebook and Zuckerberg in their malicious-prosecution action against Argentieri. Ex. E.

In that complaint, Argentieri recycled the same allegations this Court had already rejected, again asserting the WFH Document "was <u>authentic</u> and not a fraud, or a forgery" and "Zuckerberg created the STREET FAX TIFF images as a fraudulent contract" which he then "planted … onto Ceglia's mother's computer." Ex. E, ¶¶ 10, 37, 94. Alongside the complaint, he filed a motion for a so-called "case ending protective order" seeking, *inter alia*, the production of e-mails "preserved on Zuckerberg's computers and separately preserved on [his] Harvard email account." Ex. A, at 2. He declared that the *Moskowitz* action "is akin to a resurrection and rebirth of the 'WORK FOR HIRE' CONTRACT breach of contract action commenced on June 30, 2010." *Id.* at 3.

In an accompanying affirmation, Argentieri stated, "The only dispute in this action is the authenticity" of the WFH Document "versus the STREET FAX TIFF images"—the very issue this Court conclusively resolved years before. Ex. F, ¶ 1. He attached an unexecuted subpoena to

Meta commanding it to produce Mark Zuckerberg for a deposition, and all documents "pertaining to his relationship in 2003 and 2004 with Paul Ceglia," including communications between them or referencing Ceglia or "StreetFax." *Id.* at 4.

On November 19, 2024, the court denied Argentieri's motion for a protective order as procedurally deficient for failure to confer before filing. Ex. G. On May 15, 2025, defendants moved to compel Argentieri's discovery compliance. Ex. H. Argentieri responded on June 11, 2025 with a "cross motion" seeking summary judgment and an order taking judicial notice that Zuckerberg purportedly "admitted to signing the second page of the 'WORK FOR HIRE' CONTRACT" as well as an order compelling Zuckerberg's deposition and further discovery from him. Ex. I, at 1. Argentieri withdrew that motion on August 22, 2025 and three days later filed a new motion for partial summary judgment, claiming that the defendants had made "intentionally false statement[s]" by citing this Court's prior holding that the WFH Document "was a forgery, and not authentic." Ex. J, at 2, 4. He argued that the "[o]nly" way for defendants to avoid summary judgment was for Zuckerberg to "submit[] a sworn affidavit … specifically disputing the sworn statements of Paul Ceglia and Mr. Argentieri about the Contract he signed with Ceglia." *Id.* at 4.

In reply, Argentieri directly challenged the validity of this Court's judgment in this action, contending that it lacked collateral estoppel effect. Ex. K, at 14. Ignoring Zuckerberg's sworn declaration in *Ceglia*, Dkt. 46, at 1-2, Argentieri further asserted that "to date … Mark Zuckerberg has not authenticated the StreetFax Document images under oath," and that without his testimony, Magistrate Judge Foschio was unable to "sort out the truth of Ceglia's contract claim." Ex. K, at 22. In an accompanying affidavit, Argentieri renewed his efforts to seek discovery from Zuckerberg and Meta, demanding "*a few sworn words* from … Mark Zuckerberg, clearly identifying under oath exactly what document, paper, page, or line he did or did not initial or sign

in ink." Ex. L, ¶ 4. Argentieri's summary judgment motion—and his proposal that Zuckerberg provide a sworn affidavit on the issues this Court has already decided—remains pending in the *Moskowitz* action.

## LEGAL STANDARD

The All Writs Act and Anti-Injunction Act authorize federal courts to impose filing injunctions and enjoin state court proceedings that seek to relitigate or undermine their prior judgments. *See Wyly v. Weiss*, 697 F.3d 131, 137 (2d Cir. 2012).[6] The All Writs Act empowers federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Act thus allows a "federal court … to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction." *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172 (1977). "The power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice." *Id.* at 174.

Similarly, the Anti-Injunction Act permits federal courts to "grant an injunction to stay proceedings in a State court … where necessary … to protect or effectuate its judgments." 28 U.S.C. § 2283. This provision, known as the "relitigation exception," "was designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147, 150 (1988) (approving "injunction preventing relitigation of [state-law claim] in state court").

When the Anti-Injunction Act's relitigation exception applies, it is appropriate for a federal court to enjoin state court proceedings under the All Writs Act. The "core purpose of this exception

---

[6] A filing injunction is one that "bar[s] plaintiffs from filing further claims without leave of court." *Ling Li v. Asphalt Green, Inc.*, 581 F. App'x 6, 8 (2d Cir. 2014).

is to prevent relitigation of a claim or issue that previously was presented to and decided by the federal court." *1199SEIU United Healthcare Workers E. v. PSC Cmty. Servs.*, 634 F. Supp. 3d 158, 167 (S.D.N.Y. 2022) (enjoining state court proceedings challenging federal court orders confirming arbitration award under relitigation exception) (quotation marks omitted). "In other words, the relitigation exception permits a preemptive strike that avoids the need to assert prior adjudication defenses in a state court when faced with claims that have already been rejected in a federal court." *Smith v. Woosley*, 399 F.3d 428, 434 (2d Cir. 2005) (affirming, as modified, injunction under relitigation exception). It thus "reflects congressional recognition that injunctions may sometimes be necessary in order to avoid … disharmony" between the state and federal systems. *Amalgamated Sugar Co. v. NL Indus., Inc.*, 825 F.2d 634, 639 (2d Cir. 1987) (affirming injunction of state court proceedings under relitigation exception and reasoning that consent decree was res judicata as to party who was in privity with litigant in prior action).

A court's authority to enjoin "further vexatious litigation" under the All Writs Act is "beyond peradventure." *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 23 (2d Cir. 1986). A district court has "the power and the obligation to protect the public and the efficient administration of justice from [a vexatious litigant's] litigious propensities." *In re Martin-Trigona*, 737 F.2d 1254, 1262 (2d Cir. 1984). "Injunctions issued under the authority of the All-Writs Act" need not "comply with the requirements that Fed. R. Civ. P. 65 prescribes for … preliminary injunctions" because All Writs Act injunctions are "issued under [independent statutory] authority" and "stem from very different concerns than those motivating preliminary injunctions governed by Fed. R. Civ. P. 65." *In re Baldwin-United Corp.*, 770 F.2d 328, 338 (2d Cir. 1985). For example, a party need not "'state a claim'" to "obtain an All Writs Act injunction—it must simply point to some ongoing proceeding, or some past order or judgment, the integrity of which is being threatened by someone

else's action or behavior." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004).

And the other equitable "requirements for a traditional injunction do not apply" either. *Id.*; *see also, e.g.*, *1199SEIU*, 634 F. Supp. 3d at 172 ("a party need not establish irreparable harm to secure an injunction pursuant to the" All Writs Act). Likewise, filing injunctions may be issued *sua sponte*. *MLE Realty Assocs. v. Handler*, 192 F.3d 259, 261 (2d Cir. 1999).

## ARGUMENT

This Court should enjoin Argentieri from relitigating the authenticity of the WFH Document in any forum. In this action—dismissed by the Court as a fraud on the court— Argentieri raised and fully litigated that issue. There, Argentieri raised and fully litigated the same arguments he has since asserted in five different actions, including the pending *Moskowitz* action. This Court rejected his arguments over a decade ago, finding that the WFH Document was a gross fabrication and dismissing Ceglia's fraudulent complaint with prejudice. Enough is enough. Argentieri should not be permitted to continue to waste judicial and party resources with frivolous attempts to peddle his debunked, fraudulent theories. This is a textbook case for relief under the All Writs Act and Anti-Injunction Act. *See Selletti v. Carey*, 70 F. App'x 603, 606 (2d Cir. 2003) (affirming grant of motion for injunction under relitigation exception to Anti-Injunction Act brought pursuant to petition filed on docket of previously closed case); *see also Selletti v. Carey*, No. 1:96-cv-00016 (S.D.N.Y.), Minute Order dated July 31, 2000 (closing case), Dkt. 100 (petition for order under AWA).

## I. An Injunction Is Necessary And Appropriate To Restrain Argentieri From Relitigating The Authenticity Of The WFH Document

When the Anti-Injunction Act's relitigation exception applies, it is appropriate for a federal court to issue an injunction under the All Writs Act. "The relitigation exception 'is designed to implement well-recognized concepts of claim and issue preclusion.'" *Kaplan v. Reed Smith LLP*,

919 F.3d 154, 159 (2d Cir. 2019) (quoting *Smith*, 564 U.S. at 306). "For judgments in diversity cases," such as this Court's judgment in this action, "federal law incorporates the rules of preclusion applied by the State in which the rendering court sits." *Taylor v. Sturgell*, 553 U.S. 880, 891 n.4 (2008). In New York, "[c]ollateral estoppel 'bars the relitigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment[,]' and so 'the determination of an essential issue is binding in a subsequent action, even if it recurs in the context of a different claim.'" *Russell v. N.Y. Univ.*, 246 N.E.3d 868, 873 (N.Y. 2024) (citation omitted); *see Pike v. Freeman*, 266 F.3d 78, 90 n.14 (2d Cir. 2001) ("no significant difference between New York preclusion law and federal preclusion law"). The doctrine bars relitigation of an issue when: "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *Conason v. Megan Holding, LLC*, 29 N.E.3d 215, 224 (N.Y. 2015) (citation omitted).

Each of these requirements is satisfied here. The Court should enjoin Argentieri from relitigating its conclusive determination that the WFH Document was fabricated to protect its prior judgment in this case. *See* 28 U.S.C. § 1651(a); *e.g.*, *Selletti*, 70 F. App'x at 605-06 (affirming AWA injunction against prosecution of state court action alleging that singer falsely claimed authorship of song lyrics, noting that "those same claims were raised before the federal district court" and rejected "on the merits"); *Doctor's Assocs., LLC v. Tripathi*, 794 F. App'x 91, 93-94 (2d Cir. 2019) (affirming injunction of state court proceedings under relitigation exception because state court "could not reach the merits of [the arbitrability question] without contradicting the district court's delegation ruling"); *Montesa v. Schwartz*, 2016 WL 8140048, at *7 (S.D.N.Y. Jan.

13, 2016) (enjoining plaintiff from pursuing certain claims in state court "in their entirety" under relitigation exception).

### A. The Purported Authenticity Of The WFH Document Was Conclusively Determined In This Action

Argentieri seeks to relitigate the precise issue that was "[a]t the center of" this action: "the authenticity of the purported contract entitled 'Work for Hire.'" *Ceglia*, 2013 WL 1208558, at *1. Argentieri himself says the *Moskowitz* action is "akin to a *resurrection and rebirth* of the 'WORK FOR HIRE' CONTRACT breach of contract action commenced on June 30, 2010"—in other words, this very action. Ex. A, at 3 (emphasis added).

In this action, this Court found that "clear and convincing evidence establishes the StreetFax Document is the authentic contract and the [WFH] Document is a recently created fabrication," *Ceglia*, 2013 WL 1208558, at *4. As in his other follow-on lawsuits, Argentieri's complaint against Moskowitz asks the New York court to reach the opposite conclusion. Specifically, he alleges that the WFH Document "was <u>authentic</u> and not a fraud, or a forgery," and that Zuckerberg created the StreetFax Document "as a fraudulent contract" and "planted" it on "Ceglia's mother's computer." Ex. E, ¶¶ 10, 37, 94; *see also* Ex. K, at 42 ("Ceglia's 'Work for Hire' Contract … is authentic and binding on Zuckerberg."). In Argentieri's own words, "The only dispute in [*Moskowitz*] is the authenticity of the 'WORK FOR HIRE' CONTRACT versus the STREET FAX TIFF images." Ex. F, ¶ 1. He further alleges that Magistrate Judge Foschio's "opinion that the WFH [Document] was a recently created two page fraud and forgery will never have any res judicata precedent in the Supreme Court of New York." Ex. E, ¶ 34. And his papers insist that this Court's determination that the WFH Document was a forgery is not entitled to collateral estoppel effect. *See* Ex. K, at 13-29.

Because the issues in the *Ceglia* and *Moskowitz* actions are identical, the first factor is

satisfied.

**B.**     **The Purported Authenticity Of The WFH Document Was "Actually Litigated" And Decided In This Action**

The purported authenticity of the WFH Document was litigated and decided against Argentieri and Ceglia in this action.  An issue is "actually litigated" when, "by the pleadings or otherwise," it is "submitted for determination, and is determined."  Restatement (Second) of Judgments § 27, cmt. d.  Magistrate Judge Foschio recognized that the "[t]he linchpin" of Facebook and Zuckerberg's motion to dismiss Ceglia's complaint was their argument "that the [WFH] Document is a recently created fabrication such that [Ceglia], by pursuing this action, is perpetrating a fraud on the court."  *Ceglia*, 2013 WL 1208558, at *7.  Argentieri, on behalf of Ceglia, vigorously—though unsuccessfully—contested that defense.  He argued, among other things, that "Defendants have failed to rebut evidence [Ceglia] submitted to establish the authenticity of the [WFH] Document."  *Id.* at *15 (citation omitted).  He also "rais[ed] issues with several of Defendants' experts' reports regarding the authenticity of both the [WFH] Document and the supporting e-mails, [and] assert[ed] Defendants have misrepresented the facts to create the impression that Plaintiff wrongly destroyed evidence."  *Id.* (citations omitted).

Magistrate Judge Foschio carefully reviewed each side's submissions and found that "clear and convincing evidence establishes the StreetFax Document is the authentic contract and the [WFH] Document is a recently created fabrication."  *Id.* at *73.  Accordingly, Magistrate Judge Foschio recommended that the action be dismissed with prejudice.  *Id.* at *57.  This Court adopted Magistrate Judge Foschio's Report and Recommendation in full and granted Facebook and Zuckerberg's motion to dismiss "on the ground that the purported contract upon which the action is predicated is a fabrication."  *Ceglia*, 2014 WL 1224574, at *1.  The Second Circuit affirmed. *Ceglia*, 600 F. App'x at 37.  Thus, the validity of the WFH Document was actually litigated and

conclusively resolved after multiple levels of review.

### C. Argentieri Had A Full And Fair Opportunity To Litigate The Purported Authenticity Of The WFH Document

#### 1. *Argentieri Seeks To Relitigate The Same Issues That He Litigated In This Action.*

As Ceglia's counsel, Argentieri had every opportunity to litigate the authenticity of the WFH Document. His complaint in the *Moskowitz* action simply reasserts the same evidence, arguments, and theories that this Court and the Second Circuit squarely rejected.

*First*, Argentieri again contends that because the second pages of the StreetFax Contract and WFH Document are "identical," the WFH Document must be genuine. Ex. E, ¶ 50. But that argument was presented by Argentieri to—and rejected by—this Court over a decade ago. Magistrate Judge Foschio acknowledged the similarity between the second pages but explained that it was "a distinct possibility" that "a recently fabricated first page [was] substituted for the original first page and then stapled to the original second page." *Ceglia*, 2013 WL 1208558, at *36, *40-41. He deemed the "identical … second page" theory "not probative of anything relevant" to authenticity and aptly described it as "a red herring." *Id.* at *36.

*Second*, Argentieri again relies on expert reports from the *Ceglia* and *Holder* actions that he submitted in those proceedings. Ex. E, ¶¶ 57-63. His own complaint confirms that each report was part of those earlier cases. *Id.* ¶ 63 ("[T]he full expert reports of Stewart, Blanco, Osborn, Aginsky, and Rantanen, may be found [on the *Ceglia* docket], and the Koppenhaver and the Winkleman expert reports were filed [in *Holder*]."). Those reports were considered and rejected when this Court determined that the WFH Document was a forgery.[7]

---

[7] The Court dismissed *Holder* the same day it decided *Ceglia* because it found the *Ceglia* "action to have been a sham" and thus Ceglia's claims for immunity from criminal prosecution "to be without merit." *Holder*, 2014 WL 12773896, at *1. Given the overlap between the *Ceglia* and

*Third*, Argentieri reprises his claim that Facebook and Zuckerberg "concealed" e-mails between Zuckerberg and Ceglia, which he speculates would authenticate the fraudulent WFH Document. Ex. E, ¶¶ 64-98. But, as Argentieri admits, *id.* ¶ 87, he made this same argument in a declaration he submitted in his own name in this action (Dkt. 623), and Magistrate Judge Foschio expressly found that the "absence of relevant e-mails" from the relevant period did not suggest concealment. Instead, it "corroborate[d]" Facebook's and Zuckerberg's position that the purported supporting emails were fake. *Ceglia*, 2013 WL 1208558, at *55.

*Finally*, Argentieri asserts that "federal government testing" verified the WFH Document's authenticity. Ex. E, ¶¶ 52-56. But the reports he cites—which were previously submitted in this and the *Holder* proceeding—show the opposite. The first, submitted by Argentieri in the *Holder* action (which thus could have been submitted in this action), found evidence of alteration of the WFH Document. *See* Dkt. 61-2, *Ceglia v. Holder*, No. 1:13-cv-00256-RJA (W.D.N.Y. Jan. 2, 2014) (declaration of Argentieri annexing Cawley report). The second, submitted during Ceglia's Second Circuit appeal (after being produced by the government in Ceglia's criminal prosecution), similarly identified tampering and did nothing to disturb the Second Circuit's conclusion that "the [WFH] document … is a forgery." *Ceglia*, 600 F. App'x at 37; *see also* Dkt. 144, at 2-7, *Ceglia v. Zuckerberg*, No. 14-1365 (2d Cir. Apr. 3, 2015) (Stephens report).[8]

---

*Holder* suits, Argentieri had every incentive to submit the best evidence supporting the validity of the WFH Document in *Ceglia*.

[8] Argentieri also rehashes a series of allegations purporting to show that it is the StreetFax contract—not the WFH Document—that is a forgery. For example, he raises arguments concerning differing interlineations between the StreetFax and WFH documents, the significance of a $3,000 cashier's check deposited by Zuckerberg, the significance of a document known as the "Kato" contract, and Zuckerberg's purportedly having "planted" the StreetFax contract onto the computer of Ceglia's mother. Ex. E, ¶¶ 37, 94. Each of these arguments was presented to—and rejected by—this Court. *See Ceglia*, 2013 WL 1208558, at *38-41 (rejecting interlineation arguments); *22-23 (rejecting cashier's check arguments); *30 n.41 (rejecting arguments about the "Kato" contract); *21 (rejecting "planting" arguments as "beyond absurd").

In short, Argentieri had a full and fair opportunity to litigate the authenticity of the WFH Document in the *Ceglia* and *Holder* actions. Each of his current allegations—the "identical pages," the expert reports, the missing emails, and the "government testing"—was raised and rejected in those cases.

### 2. This Court's Decision In This Action Is Preclusive Against Argentieri.

Argentieri cannot avoid preclusion simply because he was Ceglia's counsel and not a party. Nonparties who control prior litigation are bound by the outcome. *Watts v. Swiss Bank Corp.*, 265 N.E.2d 739, 743-44 (N.Y. 1970) (finding "no single fact [] determinative" and that nonparty bound if participation "amount[s] to a sharing in control of the litigation"); *Taylor*, 553 U.S. at 895 (nonparty bound if he "assumed control over the litigation in which that judgment was rendered") (cleaned up). The inquiry turns on the "character and extent" of the nonparty's involvement. *Watts*, 265 N.E.2d at 743.

Courts in this District and elsewhere have held that attorneys are in privity with clients where their participation exceeds that of a disinterested advocate. *Jones v. Grisanti*, 2024 WL 3415361, at *9 (W.D.N.Y. July 15, 2024) (finding attorney in privity with former client for purposes of collateral estoppel when attorney's "role was unlike 'that of an ordinary attorney, who typically acts as a disinterested advocate with the purpose of representing the [client's] interests … rather than [the attorney's] own'"); *see also Anonymous v. N.Y. State Justice Ctr. for the Protection of People with Special Needs*, 167 A.D.3d 113, 117 (3d Dep't 2018) (attorney "may be found to be in privity with the parties that he or she represents when the particular circumstances otherwise satisfy the requirements of collateral estoppel").

In his own telling, Argentieri was anything but disinterested. He proclaims that he "has either been an attorney, a party, or a fact witness, continuously from June 30, 2010, for proving

the authenticity of the WFH contract." Ex. E, ¶ 7. He took the highly unusual step of personally filing multiple letters in Ceglia's criminal action—where he was not counsel—urging the court to reject Magistrate Judge Foschio's findings that the WFH Document was fabricated. Crim. Dkt. 185, at 2; *see also* Crim. Dkt. 211-1 (asserting that evidence concerning the authenticity of the WFH Document was withheld in the *Ceglia* action). In one such letter, he emphasized that he acted solely in his personal capacity: "I, and I alone, without the advice, consent, support or any involvement of any kind from Mr. Ceglia's past and present defense attorneys, or anyone else," am "submit[ting]" the "letter" "in camera" to "chambers." Crim. Dkt. 185, at 1.

Argentieri has long characterized himself as a principal combatant in this 15-year saga. He describes his *Moskowitz* lawsuit as "a throwdown against Mark Zuckerberg … and his lawyers, in an epic but simple contest," and claims that *he* "began this long standing dispute when this Court granted Plaintiff's [Argentieri's] Order to Show Cause [in the *Ceglia* action] on June 30th, 2010." Ex. A, at 1. He alleges that Facebook and Zuckerberg's malicious-prosecution suit interfered with *his* "*personal*/professional relationship in litigating the authenticity of the 'WORK FOR HIRE' CONTRACT." Ex. E, ¶ 113 (emphasis added) (contending that while the dispute "began" in the *Ceglia* action, in *Moskowitz* it will "be brought to a final judgment … to forever decide" the authenticity of "the 'WORK FOR HIRE' Contract"). He even refers to this action as "my prior litigation" and "my lawsuit." Ex. A, at 2; Ex. F, at 3.

These admissions eliminate any doubt about Argentieri's control and stake in the prior case. His participation in this action—and in related proceedings concerning the WFH Document—far exceeded that of a traditional "disinterested advocate," *N.Y. State Justice Ctr.*, 167 A.D.3d at 118, and "amount[ed] to a sharing [of] control of the litigation" with Ceglia. *Watts*, 265 N.E.2d at 743-44. He had the same "day in court" that Ceglia had, especially because he was the

one "present[ing] proofs and argument." *Taylor*, 553 U.S. at 895.

Having so deeply intertwined his professional and personal interests in that litigation, Argentieri cannot now seek readjudication of the same issue. He "so involve[d] himself with [the litigation] … that the result is" preclusive against him. *Watts*, 265 N.E.2d at 743.

### D. Resolution Of The WFH Document's Authenticity Was Necessary To Support This Court's Judgment In This Action

The authenticity of the WFH Document was not a peripheral issue—it was the foundation of this Court's judgment in this action. Magistrate Judge Foschio made clear that "the center of this action is the authenticity of the purported contract entitled 'Work for Hire,'" that "the authenticity of the [WFH] Document is critical to this action," and that "[t]he linchpin of Defendants' Motion to Dismiss is their assertion that the [WFH] Document is a recently created fabrication." *Ceglia*, 2013 WL 1208558, at *1, *7.

After a comprehensive evidentiary analysis, Magistrate Judge Foschio concluded that "the [WFH] Document is a recently created fabrication," and recommended dismissal on that basis. *Id.* at *73. This Court adopted his "admirably well-reasoned Report and Recommendation" and dismissed this action on "the ground that the purported contract upon which the action is predicated is a fabrication." *Ceglia*, 2014 WL 1224574, at *1.[9] The Second Circuit affirmed, holding that "the [WFH] document … is a forgery." *Ceglia*, 600 F. App'x at 37.

These rulings leave no ambiguity: the determination that the WFH Document was a forgery was both necessary and central to the final judgment. The doctrine of collateral estoppel therefore applies with full force.

---

[9] Although Magistrate Judge Foschio held, in the alternative, that the action should be dismissed based on Ceglia's spoliation of evidence, *Ceglia*, 2013 WL 1208558, at *73, "[t]he general rule in this Circuit is that if a court decides a case on two grounds, each is a good estoppel." *Terry v. Charitable Donor Advised Fund, L.P.*, 2024 WL 382113, at *17 (S.D.N.Y. Feb. 1, 2024) (quoting *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 45 (2d Cir. 1986)).

*     *     *

To safeguard the integrity of its prior judgment and to prevent further attempts to relitigate a settled issue, this Court should exercise its authority under the All Writs Act and enjoin Argentieri from prosecuting the *Moskowitz* action or any future action asserting the authenticity of the WFH Document.

## II. An Injunction Is Necessary And Appropriate Because Argentieri Is A Vexatious Litigant

An injunction is further warranted because Argentieri is a vexatious litigant who persistently abuses the judicial process to relitigate issues this Court has already decided. A litigant qualifies as vexatious when he "has a history of vexatious litigation" and "is likely to continue to abuse the judicial process and harass other parties." *Safir*, 792 F.2d at 24. Courts have long recognized their inherent authority under the All Writs Act to protect the integrity of the judicial system from "vexatious litigants by completely foreclosing the filing of designated categories of cases." *In re Martin-Trigona*, 9 F.3d 226, 228 (2d Cir. 1993) (collecting cases, including decision barring "future litigation in state courts"); *see also, e.g.*, *Hermes of Paris, Inc. v. Swain*, 2021 WL 5170726, at *3-4 (2d Cir. Nov. 8, 2021) (summary order) (affirming injunction barring vexatious litigant from "refiling a motion to reinstate his complaint in New Jersey state court and from filing future lawsuits against [petitioner] for claims arising out of his former employment"); *Satterfeld v. Pfizer, Inc.*, 2005 WL 1765708, at *2 (S.D.N.Y. July 18, 2005) (enjoining vexatious litigant "from instituting any new action, in state or federal court, based on the acts complained of in this litigation"), *aff'd*, 208 F. App'x 59 (2d Cir. 2006). In determining whether to impose a filing injunction on a vexatious litigant, courts have considered: "(1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, *e.g.*, does the litigant have an objective good faith expectation of

prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties." *Safir*, 792 F.2d at 24.

Argentieri independently satisfies each of these criteria. Since serving as counsel in this action, Argentieri has engaged in a decade-long campaign to reopen the question of the WFH Document's authenticity. His efforts include personally filing letters in Ceglia's criminal case (where he was not counsel), pursuing a defamation suit against Facebook and its executives, and bringing two new civil actions, against Meta and Facebook's local counsel, Moskowitz. He has repeatedly made the same discredited claims, demanded the same harassing discovery, and sought to "resurrect[] and rebirth" this action. Ex. A, at 3.

Argentieri's conduct is the product of defiance, not misunderstanding. Acting largely *pro se*, he abandons his discovery requests or withdraws his suit once judicial scrutiny begins—only to emerge anew with another challenge pressing the same baseless theories. This pattern of whack-a-mole imposes needless expense on defendants and burdens the courts with serial "repetitive, vexatious, and frivolous" litigation. *E.g.*, *Marseet v. Rochester Inst. of Tech.*, 2023 WL 9539884, at *1 (W.D.N.Y. June 28, 2023), *report and recommendation adopted*, 2024 WL 108681, at *9 (W.D.N.Y. Jan. 10, 2024) (issuing filing injunction against plaintiff under AWA in light of "Plaintiff's history of repetitive, vexatious, and frivolous filings"); *see also Jones v. City of Buffalo*, 867 F. Supp. 1155, 1169-70 (W.D.N.Y. 1994) (affirming AWA injunction against litigant who filed multiple lawsuits that were "vexatious, harassing and duplicative").

Argentieri's vexatious litigation conduct exemplifies the type of abuse the AWA was designed to prevent. Each new filing reasserts long-rejected claims, forces Meta and its counsel to

respond yet again, and drains judicial resources. This abusive cycle will have no end until the Court imposes one.

Accordingly, to protect its prior judgments and to prevent further misuse of the judicial system, this Court should exercise its authority under the All Writs Act to issue a filing injunction against Argentieri as a vexatious litigant, enjoining him from filing any action asserting the authenticity of the WFH Document. His claims have been heard, rejected, and finally resolved.

## III. The Traditional Equitable Factors Also Support Injunctive Relief

Although Meta need not demonstrate the traditional equitable factors for an injunction to obtain relief under the All Writs Act or Anti-Injunction Act, those factors independently confirm that an injunction is necessary and proper. Meta is overwhelmingly likely to succeed on the merits for the reasons already discussed. *See supra* Part I-II; *United States v. Mason Tenders Dist. Council of Greater N.Y.*, 205 F. Supp. 2d 183, 187-88 (S.D.N.Y. 2002) ("The likelihood of success on the merits is also great because … an injunction is necessary and appropriate under the All Writs Act to enforce this Court's earlier order."). The remaining factors—irreparable injury, the balance of equities, and the public interest—all point decisively toward injunctive relief.

**Irreparable Injury**. "The specter of inconsistent rulings … constitutes irreparable harm." *E.g.*, *Keep on Kicking Music, Ltd. v. Hibbert*, 268 F. Supp. 3d 585, 591 (S.D.N.Y. 2017). Argentieri's repeated efforts to relitigate this action are an "assault on this Federal Court's jurisdiction and … the effectiveness of its judgments," which independently constitutes irreparable injury. *Diabo v. Delisle*, 500 F. Supp. 2d 159, 171 (N.D.N.Y. 2007). As one court observed, "[i]rreparable … means no more than that a Court sees no really good reason in conscience to permit a litigant to act apparently in a manner to flout its orders and determinations." *Broad. Music, Inc. v. CBS, Inc.*, 421 F. Supp. 592, 594 (S.D.N.Y. 1976). Where the federal courts' jurisdiction requires protection, "[it] need not await the arrival of a litigant able to show a private

entitlement to relief." *In re Martin-Trigona*, 737 F.2d at 1262.

Argentieri has already tried to drag Meta and its CEO into the *Moskowitz* action through harassing discovery demands. Ex. J, at 4; *see also* Ex. L, ¶ 4 (demanding "*a few sworn words from … Mark Zuckerberg*"). Such tactics threaten to force Meta into wasteful and burdensome proceedings. As the Second Circuit has recognized, "the cost of relitigating … issues already fully tried" constitutes irreparable injury due to the "burden and wastefulness of duplicative proceedings." *Woodlawn Cemetery v. Loc. 365, Cemetery Workers & Greens Attendants Union*, 930 F.2d 154, 156-57 (2d Cir. 1991). The ongoing threat of repetitive litigation and discovery burdens on Meta and this Court underscores the need for injunctive relief.

**Balance of Equities**. The equities overwhelmingly favor Meta. Preventing Argentieri from filing further suits does not deprive him of any legitimate opportunity—he has already had multiple "full and fair opportunities to litigate" the authenticity of the WFH Document. *Erie Indem. Co. v. Stephenson*, 2024 WL 844370, at *10 (W.D. Pa. Feb. 28, 2024). As courts have recognized, "[t]he rules of equity do not require that [a litigant] be given a second bite at the apple in the state forum in order to obtain a more favorable result." *Id.* (quoting *In re SDDS, Inc.*, 97 F.3d 1030, 1041 (8th Cir. 1996)). Because Argentieri's claims are barred by issue preclusion, "his pursuit … would likely be futile." *Orkin v. Albert*, 742 F. Supp. 3d 17, 27 (D. Mass. 2024) (granting permanent injunction under relitigation exception). An injunction thus would not harm Argentieri—it would merely prevent him from continuing to waste judicial and party resources on matters long resolved. By contrast, allowing him to continue would expose Meta and this Court to serial duplicative litigation and the specter of "inconsistent verdicts." *Orkin*, 742 F. Supp. 3d at 27. The balance of equities weighs sharply in favor of an injunction.

**Public Interest**. The public interest also demands an injunction. Collateral estoppel

24

"'protects … adversaries from the expense and vexation attending multiple lawsuits, [] conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Cnty. of Sacramento v. Henrikson*, 2017 WL 1207884, at *5 (E.D. Cal. Feb. 3, 2017) (quoting *Montana v. United States*, 440 U.S. 147, 153-54 (1979)). The public has a clear interest "in the integrity of the court system, where litigants pursue their claims upon a truthful and nonfrivolous basis, without an improper purpose." *Orkin*, 742 F. Supp. 3d at 27. Argentieri's continued filings are the opposite—they "abus[e] the judicial system … with needless litigation." *Id.* Allowing such conduct to persist would "undermine the integrity and finality of this Court's judgment and expose [Meta] to renewed—and unwarranted—uncertainty, conflict, and expense." *Id.* An injunction directly serves the public interest and the precise purpose of the relitigation exception.

## CONCLUSION

"The time has come to call a halt and to permit [Meta] to rest on its victory in the federal courts without having endlessly to defend it in the various fora through which [Argentieri] may meander." *Walter E. Heller & Co. v. Cox*, 379 F. Supp 299, 309 n.37 (S.D.N.Y. 1974). The Court should enjoin Argentieri from relitigating the authenticity of the WFH Document in any forum and, at a minimum, it should enjoin the pending *Moskowitz* action.

Dated: November 12, 2025

Respectfully submitted,

Thomas H. Dupree, Jr. (*pro hac vice*)
Jacob T. Spencer (*pro hac vice pending*)
Jessica L. Wagner (*pro hac vice pending*)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-5306
(202) 955-8500
tdupree@gibsondunn.com
jspencer@gibsondunn.com
jwagner@gibsondunn.com

/s/ *Terrance P. Flynn*
Terrance P. Flynn
Harris Beach Murtha Cullina PLLC
726 Exchange Street
Suite 900
Buffalo, NY 14210
(716) 200-5120
tflynn@harrisbeach.com

Matthew J. Benjamin (*pro hac vice pending*)
Amanda M. Aycock (*pro hac vice pending*)
Timothy Sun
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193
(212) 351-4000
mbenjamin@gibsondunn.com
aaycock@gibsondunn.com
tsun@gibsondunn.com

*Attorneys for Defendant*
  *Meta Platforms, Inc.*